IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ANTONIO MARCELLUS SMITH,
    Petitioner,

v.                                        Civil No. 3:21cv722 (DJN)

DAVID LEU,
    Respondent.[1]

**MEMORANDUM OPINION**

Antonio Marcellus Smith, a federal inmate proceeding *pro se*, submitted this 28 U.S.C. § 2241 Petition. ("§ 2241 Petition," ECF No. 1.)[2] Smith raises the following grounds for relief:[3]

    Claim One:    Smith was "denied access to a program granted by Congress, the First Step Act [("FSA")], and because of this, [he did] not receiv[e] the benefits of said program." (§ 2241 Petition at 6.)

---

[1] According to Respondent, Robert Wilson is no longer the acting warden at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"). (Government's Reply (ECF No. 11) at 1 n.1.) The current warden at FCC Petersburg is David Leu. (*Id.*) The Clerk is DIRECTED to update the docket and the case caption accordingly.

[2] The statute provides, in pertinent part, that:

    (c) The writ of habeas corpus shall not extend to a prisoner unless--
    (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
    (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
    (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C.A. § 2241(c)(1)–(3).

[3] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the record. The Court corrects the capitalization, punctuation, and spelling in quotations from the parties' submissions.

> Claim Two: FCC Petersburg "never instituted an alternative plan to deal with the [COVID–19] pandemic and provide [FSA programing]." (§ 2241 Petition at 7.)
>
> Claim Three: "Other facilities were able to continue administering [FSA programing] during the pandemic." (§ 2241 Petition at 7.)
>
> Claim Four: FCC Petersburg "had alternative avenues available to them [to implement FSA programing] but chose not to use them." (§ 2241 Petition at 8.)

Aside from being wholly conclusory, *see Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas petition appropriate where it "stated only bald legal conclusions with no supporting factual allegations"), Claims One through Four are redundant, stating, at their core, only one ground for relief. Specifically, Smith asserts that the staff at FCC Petersburg violated his rights by not offering him as many FSA programs as he thought were appropriate during the COVID–19 pandemic. Accordingly, the Court will address Claims One through Four collectively.

The Government has filed a Motion to Dismiss in which it argues that this Court lacks jurisdiction to hear Smith's claims, that Smith failed to exhaust his administrative remedies and that Smith's claims otherwise lack merit. (Motion to Dismiss and Supporting Memorandum (ECF Nos. 7, 8).) On June 27, 2022, while he was still incarcerated at FCC Petersburg, Smith filed a response. (*See* Response (ECF No. 9) at 13 (listing Petersburg Medium as Smith's address).) A little over one week later, on July 5, 2022, Smith was released from custody. (*See* Government's Reply at 2–3 ("[T]he BOP released Petitioner on July 5, 2022, to his term of supervised release.); *see also* ECF No. 10, at 1 (Petitioner's Notice of Change of Address).)[4] This change in circumstance prompted Respondent to argue that Smith's claims have been rendered moot. (Government's Reply at 2–3.) Specifically, Respondent contends that:

---

4  The Bureau of Prisons ("BOP") Inmate Locator confirms Smith's release on July 5, 2022. *See* https://www.bop.gov/inmateloc// (select "Find By Number," type 85569-083 in the field provided, and follow the "search" button) (last visited January 3, 2023).

> Petitioner was previously projected to be released from his federal sentence on February 10, 2023. However, . . . staff at [FCC Petersburg] routinely conducted an updated risk assessment to determine Petitioner's eligibility to receive time credit for his participation in eligible programing under the [FSA]. During this assessment, Petitioner's risk recidivism level was reduced from a "medium-risk" to a "low-risk." Thus, Petitioner became eligible for the application of FSA time credits. As Petitioner had earned FSA time credits during his incarceration, the credits were applied towards early transfer to supervised release once BOP staff assessed Petitioner at a "low-risk" recidivism level. Subsequently, and due to his FSA earned time credits, the BOP released Petitioner on July 5, 2022, to his term of supervised release.
>
> Therefore, Petitioner's earned time credits under the FSA have been applied towards his supervised release, and he has, in fact been released from federal custody; thus, Petitioner has already received any relief he could be provided in connection with the relief requested in this Petition . . . .

(Government's Reply at 2–3 (internal citations omitted).) Smith has not responded to the Government's argument that his claims are moot, nor has he communicated with the Court since his release from incarceration. Accordingly, and as discussed below, the Motion to Dismiss (ECF No. 7) will be GRANTED, and both the § 2241 Petition (ECF No. 1) and this action will be DISMISSED as MOOT.

## I.     STANDARD OF REVIEW

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the petitioner, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Rule 12(b)(1) can attack subject matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the petition on its face, asserting that the petition fails to state a claim upon which subject matter jurisdiction can lie. *See id.* (citing *Adams*, 697 F.2d at 1219).

3

Alternatively, a Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219 (explaining that "it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based"). In such a case, "the district court may then go beyond the allegations of the [petition] and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citations omitted). Consideration of evidence outside of the pleadings on a Rule 12(b)(1) motion does not necessarily convert the motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); *McBurney v. Cuccinelli*, 616 F.3d 393, 409 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part) (discussing that motions under Rule 12(b)(1) are not restricted by Rule 12(d)). However, "[t]he district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans*, 166 F.3d at 647 (citation omitted).

## II.     BACKGROUND

On October 8, 2020, this Court sentenced Smith to forty-eight (48) months of incarceration following his guilty plea and conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *See United States v. Smith*, No. 3:20cr14–DJN (E.D. Va. Oct. 8, 2020). Beginning on November 3, 2020, Smith was housed at FCC Petersburg. (ECF No. 8-1 ¶ 4.)[5]

---

[5]     The Court omits secondary citations when referring to any party's submissions.

4

During the ensuing COVID–19 pandemic, the BOP began monitoring the spread of the disease at its facilities, including FCC Petersburg. (*Id.* ¶ 6.) "To ensure the safety of staff, inmates, and the public, BOP facilities . . . functioned under modified operations throughout the pandemic." (*Id.*) "In the beginning of the pandemic, FCC Petersburg was only able to offer inmates classes and programing on a limited basis." (*Id.* ¶ 9.) "[S]ince June 2021, classes and programming have been offered regularly at FCC Petersburg despite the pandemic . . . ." (*Id.*)

Smith "earned FSA time credits for completing Drug Education on December 20, 2021, and for completing the Money Smart course on December 28, 2021." (*Id.* ¶ 12.) However, on April 4, 2022, Smith underwent a risk assessment and was assigned a "medium-risk" recidivism level. (*Id.* ¶ 15.) This designation meant that Smith was "ineligible for [the] application of any earned credits [from qualified FSA programming] due to his classification." (*Id.* ¶ 16.) As of June 2022, Smith was on the "waiting list" for various other FSA courses. (*Id.* ¶ 13.)

At the time that Smith initiated this action, his projected release date was February 10, 2023. (ECF No. 11, at 2; ECF No. 8-6, at 1.) However, on June 23, 2022, when staff at FCC Petersburg changed his status to "low-risk," he became eligible for application of the FSA credits that he had earned, but which he had not been credited with, and he was released on July 5, 2022. (ECF No. 11, at 2–3; ECF No. 10, at 1.)

### III.   ANALYSIS

Article III of the Constitution limits the scope of federal court jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. "[R]ipeness, along with standing, mootness, and political question," are "doctrines that cluster about Article III" of the United States Constitution. *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 F. App'x 218, 220 (4th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). With respect to mootness, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."

5

*Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted). Further, "[i]f intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[] [is] powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983). Smith asserts that the staff at FCC Petersburg violated his rights by not offering him as many FSA programs as he thought were appropriate during the COVID–19 pandemic.

Initially, Smith was scheduled to be released on February 10, 2023. (ECF No. 11, at 2; ECF No. 8–6, at 1.) However, on July 5, 2022, Smith completed his sentence and was released from incarceration, almost eight months ahead of schedule. (ECF No. 11, at 2–3; ECF No. 10, at 1.) Smith's early release occurred because staff at FCC Petersburg revised Smith's risk classification and applied FSA credits to reduce Smith's sentence. (ECF No. 11, at 2–3.) Thus, Smith's completion of his sentence renders his claim challenging the lack of availability of FSA programing moot. *See United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018) (citation omitted) (explaining that a case is moot "when it is *impossible* for a court to grant *any* effectual relief whatever"); *cf. Spencer v. Kenma*, 523 U.S. 1, 7 (1998) (holding that a challenge to incarceration for a parole revocation becomes moot upon completion of revoked term of imprisonment). Accordingly, Smith's claims will be DISMISSED as MOOT.[6]

---

[6] The FSA was enacted on December 21, 2018. *See* Pub. L. No. 115–391, 132 Stat. 5194. However, the FSA and its programs did not go into effect immediately. The plain text of the statute states that the BOP is entitled to a "Phase-in" period. 18 U.S.C. § 3621(h)(2). Under the "statute, the BOP has two years from that date an inmate undergoes a risk assessment and is found eligible for FSA programing to provide him with "evidence-based recidivism reduction programs and productive activities," with the priority for such programs going to those inmates who will be released before him. *Id.* Further, "full implementation" of the FSA was not required until January 15, 2022. *See Saleh v. Young*, 2021 WL 1758711, at *1–*2 (S.D. W.Va. May 4, 2021) (citations omitted) (explaining that the FSA provides the BOP until January 15, 2022 to "provide evidence-based recidivism reduction programs and productive activities for all prisoners"), *adopting R & R*, 2021 WL 1774140 (S.D. W.Va. Feb. 10, 2011).

Smith was clearly participating in FSA programing by December 2021 (*see* ECF No. 8-1 ¶¶ 12, 13), before the FSA's "full implementation" date of January 15, 2022. *Saleh*, 2021 WL

6

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 7) will be GRANTED. The § 2241 Petition (ECF No. 1) will be DENIED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to all counsel of record and Smith.

Richmond, Virginia
Date: January 3, 2023

/s/
David J. Novak
United States District Judge

---

1758711, at *1–*2. To the extent that Smith faults Respondent for delaying his enrollment in FSA programing, Smith fails to state, and the Court fails to discern, why Smith would be entitled to an earlier enrollment date. However, given the fact that Smith's claims are moot, the Court need not consider this issue further.